**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JUAN LUCAS PEREIRA-DA SILVA, | ) | |
| Petitioner, | ) | |
| | ) | Civil Action No. 1:26-cv-10446 |
| v. | ) | |
| | ) | |
| ANTONE J. MONIZ, et al., | ) | |
| Respondents. | ) | |

**PETITIONER'S EMERGENCY MOTION FOR EXPEDITED RULING
AND IMMEDIATE RELEASE FROM UNLAWFUL DETENTION**

## I.    INTRODUCTION

Petitioner Juan Lucas Pereira-Da Silva respectfully moves this Court on an emergency basis for an order granting his fully-briefed petition for a writ of habeas corpus and ordering his immediate release from U.S. Immigration and Customs Enforcement ("ICE") custody at the Plymouth County Correctional Facility. Petitioner has been detained for approximately 138 days. His petition has been pending since January 28, 2026, and fully briefed since February 27, 2026. On Friday, April 17, 2026, Petitioner will be compelled to appear at an individual merits hearing before an Immigration Judge in Chelmsford while shackled, in detained posture, and without the ability to meaningfully prepare with counsel, even though every district court to examine this evidentiary record in the intervening months has concluded that immediate release is the appropriate remedy.

Two developments require this Court's immediate action. First, on December 18, 2025, the United States District Court for the Central District of California entered final judgment in *Maldonado Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM, declaring that individuals in Petitioner's posture "are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory

detention under § 1225(b)(2)," and vacating the Department of Homeland Security's July 8, 2025 Interim Guidance as "not in accordance with law" under 5 U.S.C. § 706(2)(A). Dkt. 94 at 2. Second, an ever-growing number of district courts have concluded that a remand for a bond hearing is no longer an adequate remedy because the Executive Office for Immigration Review ("EOIR") has adopted a policy of open defiance of that final judgment, producing, in the words of one court, "preordained outcomes." *Singh v. Valdez*, No. 1:26-cv-01109-WJM, slip op. (D. Colo. Apr. 1, 2026).

This Court has already applied the same analysis that controls this case. In *Diaz Diaz v. Mattivelo,* No. 1:25-cv-12226-JEK (D. Mass. Aug. 27, 2025), Judge Kobick granted habeas and ordered ICE to release the petitioner from the very same facility within forty-eight hours. Petitioner respectfully requests the same relief on the same legal basis.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a 34-year-old Brazilian national and asylum applicant. He entered the United States on September 1, 2024, and was paroled into the country on October 2, 2024 after expressing a credible fear of return. He has remained in the United States, at a fixed address in Massachusetts, and available to immigration authorities throughout the approximately fourteen months between his parole and his re-detention.

On November 28, 2025, following the resolution of a Massachusetts misdemeanor matter, ICE re-arrested Petitioner. He has remained in ICE custody at Plymouth County Correctional Facility continuously since that date, a period of approximately 138 days as of the filing of this motion. His I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture was filed on February 18, 2026. A supplemental merits packet was

filed on April 10, 2026. His individual merits hearing is scheduled before Immigration Judge Natalie Smith in Chelmsford on April 17, 2026.

Petitioner filed the pending habeas petition on January 28, 2026. This Court (Joun, J.) entered an emergency stay of transfer that same day. The case was reassigned to the Honorable George A. O'Toole, Jr. on January 29, 2026. Respondents answered on February 12, 2026, and Petitioner replied on February 27, 2026. Briefing has been complete for approximately six weeks. During those six weeks, Petitioner has received no custody redetermination hearing before a neutral adjudicator. The Immigration Judge declined to exercise bond jurisdiction, relying on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), the same Board decision that the Central District of California has ordered EOIR to disregard. *See Maldonado Bautista v. Noem*, Dkt. 116 (C.D. Cal. Feb. 18, 2026) (order granting motion to enforce and vacating Yajure Hurtado as applied to class members).

### III.    ARGUMENT

#### A. *This Court Has Jurisdiction to Order Immediate Release.*

This Court possesses jurisdiction under 28 U.S.C. § 2241 to review the lawfulness of immigration detention. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007). The jurisdiction-stripping provisions of 8 U.S.C. § 1252(b)(9) and § 1252(a)(5) channel challenges to removal orders, not challenges to custody. *Aguilar*, 510 F.3d at 11–12. Nor does § 1252(g) bar this Court from ordering release, as that provision reaches only the discrete decisions to commence proceedings, adjudicate cases, and execute removal orders. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550–51 (2022). Petitioner seeks release from physical custody while his

removal proceedings are pending. He seeks no order that would enjoin a merits hearing or disturb the jurisdiction of the Immigration Court over his removal proceedings.

**B. *Petitioner's Continued Detention Is Unlawful Under Maldonado Bautista.***

Petitioner was paroled into the United States, resided here in the community for over a year, and was re-detained more than fourteen months after his initial encounter. Under the plain text of the statute, his custody is governed by 8 U.S.C. § 1226(a), which authorizes discretionary detention and mandates the availability of a custody redetermination hearing. *See* 8 C.F.R. §§ 236.1, 1236.1, 1003.19.

The text of § 1226(a) and its implementing regulations compel that result independent of any out-of-circuit authority. An "alien may be arrested and detained pending a decision on whether the alien is to be removed" under § 1226(a), and "may be released" on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2). The regulations, in turn, entitle such a noncitizen to a custody redetermination before an immigration judge. 8 C.F.R. §§ 236.1, 1236.1, 1003.19. Section 1225(b)(2), which authorizes mandatory detention, applies to "an applicant for admission" who is "clearly and beyond a doubt" inadmissible, and does not sensibly apply to a parolee re-detained fourteen months after a credible-fear-based parole determination.

The Central District of California has so held. *Maldonado Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM, Dkt. 94 (C.D. Cal. Dec. 18, 2025). The final judgment "DECLARES that the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)," and "VACATES the Department of Homeland Security policy described in the July 8, 2025, 'Interim Guidance Regarding Detention Authority for Applicants for Admission' under the Administrative Procedure Act as not in accordance with law. 5 U.S.C. § 706(2)(A)." *Id*. at 2. Although *Maldonado Bautista* is not binding in the First Circuit,

its APA vacatur operates nationwide against the Secretary. Accordingly, DHS has no Interim Guidance to invoke as a basis for reclassifying Petitioner's custody outside § 1226(a) and this Court is free to adopt *Maldonado Bautista*'s statutory analysis as persuasive, as numerous district courts have done. *See Singh v. Valdez*, No. 1:26-cv-01109-WJM, slip op. at 8–10 (D. Colo. Apr. 1, 2026).

Petitioner is, in every material respect, a Bond Eligible Class member. His continued detention without an individualized custody determination is therefore unlawful both under the plain text of § 1226(a) and under a standing federal declaratory judgment vacating the only agency policy ever cited as a contrary basis. Respondents have produced no independent statutory basis for that detention, and the detention is therefore ultra vires.

### C. *Continued Detention Violates Procedural Due Process.*

Even setting aside the APA vacatur, Petitioner's detention violates the Fifth Amendment. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (physical liberty is a "fundamental" interest). *Jennings v. Rodriguez* does not foreclose that claim. 583 U.S. 281 (2018). *Jennings* held only that the canon of constitutional avoidance could not be used to read periodic bond hearings into §§ 1225(b), 1226(a), and 1226(c). *Id*. at 296–303. The Court expressly declined to reach the constitutional question and remanded it. *Id.* at 313–14. Every First Circuit due-process decision cited below post-dates *Jennings* and confirms that constitutional review of prolonged immigration detention remains available. *See Reid v. Donelan*, 17 F.4th 1, 7–12 (1st Cir. 2021); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28–33 (1st Cir. 2021); *Brito v. Garland*, 22 F.4th 240, 251 (1st Cir. 2021).

Under the applicable First Circuit framework, due process in this context requires two things: an individualized assessment of flight risk and dangerousness, and a government showing by clear and convincing evidence that such detention is warranted. *Reid*, 17 F.4th at 7–12; *Hernandez-Lara*, 10 F.4th at 33; *Brito*, 22 F.4th at 251. What is now common EOIR practice, treating Petitioner's class as categorically detained, without any individualized finding, is the precise opposite of what the First Circuit requires. Applying *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the balance is decisive. The private interest is physical liberty itself. The risk of erroneous deprivation is exceptionally high because the agency has not applied the governing legal standard at all, and, as shown below, is documented to be refusing to do so as a matter of policy. The government's asserted interest cannot carry the balance when its only invoked detention authority has been judicially vacated under the APA.

On this record, an individualized assessment can only favor release. Petitioner was released on parole into the United States and remained compliant and available to immigration authorities for approximately fourteen months before his re-detention. He has deep family and community ties in Massachusetts, including a wife who was the victim of an armed robbery and requires his support as she cooperates with law enforcement and pursues a U-Visa with USCIS. Petitioner is a derivative beneficiary of that U-Visa application and was also a witness to the crime. He has counsel, an operative asylum application, and a merits hearing on the docket. He is not a flight risk, and there is no clear and convincing evidence that he poses a danger. No neutral adjudicator has ever found otherwise because, by Respondents' explicit design, no neutral adjudicator has been permitted to consider the question.

Petitioner has now been detained for approximately 138 days without any individualized bond determination, and his habeas petition has been under advisement in this Court for forty-

seven days since briefing was completed. That combination of prolonged custody on a vacated statutory theory and the absence of individualized process before any neutral decisionmaker is constitutionally intolerable. As such, emergency relief from this Court in the form of immediate release is both warranted and constitutionally required.

### D.  A Remand for a Bond Hearing Is Not an Adequate Remedy.

A federal habeas court is not confined to the remedy that would ordinarily suffice. The Great Writ is "a flexible remedy rather than a rigid one," *Boumediene v. Bush*, 553 U.S. 723, 779 (2008), and a habeas court must "adjudicate the controversy as law and justice require," *Harris v. Nelson*, 394 U.S. 286, 291 (1969). Where the forum to which a petitioner would be remanded has demonstrably ceased to apply the governing legal standard, a remand is no remedy at all.

The Executive Office for Immigration Review is presently denying custody redetermination to members of the Bond Eligible Class as a matter of policy, notwithstanding the declaratory judgment and APA vacatur entered in *Maldonado Bautista*. *See Maldonado Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM, Dkt. 116 (C.D. Cal. Feb. 18, 2026). In granting the plaintiffs' motion to enforce the final judgment, the Central District of California found: (i) that Chief Immigration Judge Teresa L. Riley had circulated nationwide guidance directing immigration judges to disregard the judgment; (ii) that 551 habeas petitions had been filed in the Central District of California in the six weeks following entry of judgment, against 165 petitions during the entire first half of 2025; (iii) that more than 400 habeas petitions had been granted to Bond Eligible Class members nationwide in that interval; and (iv) that Respondents affirmatively represented to the court that "[e]ven if [*Matter of Yajure Hurtado*] were vacated, immigration courts would follow circuit precedent and the statutory text under their own interpretive authority."

*Id*. Remanding in anticipation that the agency will render an impartial and individualized custody determination serves no meaningful purpose, as the agency has made clear it will not do so.

The federal judiciary has responded accordingly. On April 1, 2026, the District of Colorado ordered immediate release on materially indistinguishable facts, concluding that "mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Singh v. Valdez*, No. 1:26-cv-01109-WJM, slip op. (D. Colo. Apr. 1, 2026). *Singh* joins a growing body of authority in which district courts, confronted with the same evidentiary record, have declined to remand for a bond hearing and have instead ordered release directly. *Accord Zheng v. Rokosky*, 2026 WL 800203 (D.N.J. Mar. 23, 2026) (ordering immediate release of paroled asylum applicant re-detained under vacated § 1225(b) guidance, declining to remand as futile); *Murzi v. Noem*, 2026 WL 395111 (D. Colo. Feb. 12, 2026) (ordering immediate release within 12 hours and enjoining re-detention absent a clear-and-convincing pre-deprivation bond hearing); *Miri v. Bondi*, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026) (granting TRO and ordering release within 48 hours where bond determination violated due process); *Montero-Martinez v. Mattos*, 2026 WL 674497 (D. Nev. Mar. 9, 2026) (ordering release on original bond conditions where revocation rested on materially false government evidence). Immediate release is the remedy that the present record warrants and that a growing consensus of courts has now embraced.

The inadequacy of a bond-hearing remand follows from multiple converging sources. Section 1226(a) commands that custody be the product of individualized consideration. The due process principles set out above require the same. The Central District of California has documented agency-wide non-compliance in its published order. Respondents have represented to that court that immigration courts will decline to apply the governing judgment regardless of its

status. Further, a growing body of district court authority confronting this record has ordered release rather than remand for the precise reason that EOIR bond hearings have pre-ordained outcomes. A remand order would leave each of those problems intact and would return Petitioner to a forum that by its own account will not provide the process the Constitution and the statute require, and it would do so after 138 days of detention that Respondents can no longer justify under any operative legal theory. The remedy that the writ requires is immediate release.

### E. This Court Has the Equitable Authority to Order Release and Has Done So Before on Materially Indistinguishable Facts.

A federal court sitting in habeas may fashion whatever remedy the law and justice require. *Boumediene v. Bush*, 553 U.S. 723, 787 (2008); *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *Harris v. Nelson*, 394 U.S. 286, 291 (1969). Where continued detention cannot be squared with the Constitution or with governing law, release is the appropriate remedy. *Zadvydas*, 533 U.S. at 699–701.

This Court has already exercised that authority on materially indistinguishable facts. In *Diaz Diaz v. Mattivelo*, No. 1:25-cv-12226-JEK, Judge Kobick granted the petition and ordered ICE to "release Diaz Diaz from the custody of U.S. Immigration and Customs Enforcement within 48 hours" of the memorandum and order. Dkt. 23 (D. Mass. Aug. 27, 2025). Diaz Diaz, like Petitioner, was a § 1226(a) detainee held at the Plymouth County Correctional Facility whose custody the government could not lawfully justify. The petition was resolved on the written record, without an evidentiary hearing and without a remand to the immigration forum. The *Diaz Diaz* decision rested upon two earlier rulings from this Court that apply with equal force here. *See dos Santos v. Noem*, No. 25-cv-12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299 (D. Mass. July 7, 2025).

The procedural posture of this case is in one respect more compelling than *Diaz Diaz*. The petitioner in *Diaz Diaz* held an existing IJ bond order that the government had disregarded, and the Court's remedy was to enforce that prior determination by ordering release subject to it. Petitioner holds no such prior order, because the Immigration Judge has declined to exercise bond jurisdiction under the very Board decision that the C.D. California has ordered EOIR to disregard. Petitioner has therefore been detained for 138 days without ever having received the individualized custody determination that § 1226(a) and the Due Process Clause require. The absence of a prior bond order goes to the heart of his claim, and it makes release directly from this Court the only remedy that can cure the violation.

### F. The Equities and the Emergency Posture Warrant Immediate Relief.

To the extent the Court applies the traditional preliminary-injunction framework, each factor favors Petitioner. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008). Petitioner has a strong likelihood of success on the merits for the reasons stated above. The irreparable harm is continuing and compounds with every additional day of custody. Each of those days is a day of physical restraint that the government can no longer justify under any operative legal theory. His April 17, 2026, merits hearing will require Petitioner to present his asylum claim in shackles, without unrestricted access to counsel, and without a meaningful opportunity to gather and submit the comprehensive evidentiary record that an asylum applicant is entitled to develop. His detention is also functionally accelerating Respondents' efforts to conclude removal proceedings and effectuate his removal before the record has been fully developed, which is itself a due process injury. *See Reno v. Flores*, 507 U.S. 292, 306 (1993). The balance of equities tips decisively where the government's cited detention authority has been vacated under the APA and the public interest

favors enforcement of the Administrative Procedure Act and the Fifth Amendment. *Nken v. Holder*, 556 U.S. 418, 435–36 (2009).

Petitioner poses neither a meaningful flight risk nor a danger to the community. He remained in the United States and available to immigration authorities throughout the fourteen months between his parole and his re-detention. He has a fixed address in Massachusetts, counsel of record in both his removal proceedings and this habeas action, an operative I-589 application, and a U-Visa derivative petition that gives him every incentive to pursue his immigration case through to resolution. His family circumstances, including a U.S.-cooperating crime-victim spouse, further anchor him to this District.

## IV.    RELIEF REQUESTED

For the foregoing reasons, Petitioner respectfully requests that this Court enter an Order:

1) granting the pending petition for a writ of habeas corpus;

2) directing Respondents to release Petitioner from ICE custody immediately upon entry of the Order;

3) directing Respondents to file a status report confirming release no later than twelve (12) hours after entry of the Order;

4) in the alternative, ruling on the pending petition on or before April 16, 2026; and

5) granting such further relief as the Court deems just and proper.

Respectfully submitted,

April 15, 2026

/s/ Jacob S. Binnall
**Jacob S. Binnall, Esq.**
Attorney for Petitioner
Massachusetts Bar No. 712846

Law Office of Jacob Binnall PLLC
43 Park Street #17
Framingham, MA 01702
Telephone: (508) 808-8378
Email: jacob@attorneybinnall.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2026, a true and correct copy of the foregoing Motion was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.

Dated: April 15, 2026

/s/ Jacob S. Binnall
**Jacob S. Binnall**