UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 26-cv-10446-GAO

JUAN LUCAS PEREIRA DA SILVA,
Petitioner,

v.

ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, PATRICIA H. HYDE, Field Office Director, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, New England Field Office, TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement, MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, and TODD BLANCHE, Acting U.S. Attorney General, Respondents.[1]

OPINION AND ORDER
May 4, 2026

O'TOOLE, D.J.

Before the Court is Juan Lucas Pereira Da Silva's petition for a writ of habeas corpus (dkt. no. 1) and an emergency motion (dkt. no. 10), which seeks an expedited ruling on the petition and Pereira Da Silva's immediate release from his present custody by U.S. Immigration and Customs Enforcement ("ICE"). The respondents counter that the petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1) and, therefore, not entitled to release. After a hearing on the merits and careful review of the parties' submissions, the Court concludes that the petitioner has failed to meet his burden to show that his detention is unlawful. Accordingly, and for the following reasons, the petition and the motion are denied.

---

[1] Markwayne Mullin and Todd Blanche, named in their official capacities, have been automatically substituted as successors in office under Rule 25(d) of the Federal Rules of Civil Procedure.

## I. Background

The petitioner is a citizen of Brazil who entered the United States without inspection. According to Department of Homeland Security ("DHS") records provided by the respondents, on June 20, 2018, and again on March 26, 2019, the Department of State refused the petitioner's applications for a B-2 Visa. On or about September 1, 2024, U.S. Customs and Border Patrol ("CBP") arrested the petitioner near Eagle Pass, Texas, along the United States-Mexico border. That same day, CBP issued the petitioner a Notice and Order of Expedited Removal and transferred him to the custody of ICE's Enforcement and Removal Operations ("ERO"). Shortly thereafter, a U.S. Citizenship and Immigration Service ("USCIS") asylum officer determined that the petitioner had expressed a credible fear of persecution or torture. Accordingly, on September 23, 2024, USCIS vacated the prior Notice and Order of Expedited Removal and issued Pereira Da Silva a Form I-862 Notice to Appear ("NTA") before an immigration judge for proceedings under § 1229a of the Immigration and Nationality Act (the "Act" or "INA").

The NTA asserts that the petitioner is inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) (providing, in relevant part, that "any immigrant at the time of application for admission who is not in possession of a valid . . . entry document . . . is inadmissible") and § 1182(a)(6)(A)(I) (providing that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible"). On October 2, 2024, the petitioner was released on Interim Parole with instructions to appear at ERO's field office in Boston, Massachusetts, for enrollment in ICE's Alternatives to Detention Program. The petitioner was so enrolled on November 6, 2024.

The record before the Court includes a Form I-213 Record of Deportable/Inadmissible Alien, which indicates that the petitioner missed six self-report check-ins with ERO between

November 12, 2024, and October 15, 2025. Separately, on November 28, 2025, the petitioner was arraigned by a judge of the Massachusetts District Court in Framingham, Massachusetts, on one count of Assault and Battery on a Family or Household Member in violation of Massachusetts General Laws Chapter 265, Section 13M. Immediately after the arraignment, ERO arrested the petitioner pursuant to a Form I-200 Warrant for Arrest of Alien. The petitioner has since been detained by ICE at the Plymouth County Correctional Facility in Plymouth, Massachusetts.

**II.    Jurisdiction**

District courts "retain jurisdiction" over habeas petitions by noncitizens who seek to challenge "the legality of [their] detention in the immigration context." Aguilar v. U.S. Immigr. & Customs Enf't, 510 F.3d 1, 11 (1st Cir. 2007); see Gicharu v. Carr, 983 F.3d 13, 16–17 (1st Cir. 2020) (explaining that detention-only claims fit within the "narrow exception" to the Act's broad limitations on district courts' jurisdiction). The petitioner in such challenges, here Pereira Da Silva, bears the burden of showing that his detention violates the Constitution or laws of the United States. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)).

**III.    Legal Standard**

Two statutes, 8 U.S.C. §§ 1225 and 1226, predominately govern the detention of noncitizens who are subject to pending removal proceedings. Section 1225 applies to "applicants for admission." 8 U.S.C. § 1225. Under the INA, an applicant for admission is "[a]n alien present in the United States who has not been admitted." Id. § 1225(a)(1).[2] Certain classes of applicants for admission are "'inadmissible' and therefore 'removable'" from the United States. Dep't of

---

[2] The Act defines the terms "admitted" and "admission" to "mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." Id. § 1101(13)(A).

3

Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020) (quoting 8 U.S.C. §§ 1182, 1229a(e)(2)(A)). While the "usual removal process involves an evidentiary hearing before an immigration judge," id., in some cases, an applicant for admission may be subject to expedited removal "without further hearing or review," see 8 U.S.C. § 1225(b)(1)(A)(i). But in either case, § 1225 "unequivocally mandate[s] that aliens falling within [its] scope 'shall' be detained." Jennings v. Rodriguez, 583 U.S. 281, 300 (2018) (quoting 8 U.S.C. § 1225(b)).

Relevant here, an applicant for admission may avoid expedited removal if he expresses a fear of persecution or torture or an intent to seek asylum, whereupon in either circumstance "the immigration officer 'shall refer the alien for an interview by an asylum officer.'" Thuraissigiam, 591 U.S. at 109 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(ii)). In such cases, the Act provides that the applicant "shall be detained," 8 U.S.C. § 1225(b)(1)(B)(ii), "until immigration officers have finished 'consider[ing]' the application for asylum," Jennings, 583 U.S. at 299 (alteration in original) (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)). That is so whether the applicant's asylum claim "receives full or only expedited review." See Thuraissigiam, 591 U.S. at 111 (discussing 8 U.S.C. § 1225(b)(1)(B)(ii), (iii)(IV)). Unlike § 1226(a), discussed below, the statutory text of § 1225 does not say "anything whatsoever about bond hearings." Jennings, 583 U.S. at 297.

There is, however, one express exception to § 1225's otherwise mandatory scheme: the Attorney General may "on a case-by-case basis" temporarily parole applicants "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Critically, parole under § 1182(d)(5)(A) does not qualify as an "admission" within the meaning of the Act. See Doe v. Noem, 152 F.4th 272, 279 (1st Cir. 2025) (quoting 8 U.S.C. § 1182(d)(5)(A)). Thus, an applicant for admission paroled under § 1182(d)(5)(A), may be "physically present in the United States without being legally 'admitted' to the United States." Id.

4

Once the Attorney General determines that the purposes of the parole under § 1182(d)(5)(A) "have been served," the statute provides that the parolee "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A); see 8 C.F.R. § 212.5(e) (discussing "[t]ermination of parole" under § 1182(d)(5)).

Section 1226 of the INA, on the other hand, "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." Jennings, 583 U.S. at 289. In contrast to § 1225's mandatory detention requirement, § 1226(a) establishes a discretionary framework for detaining noncitizens within its scope. It "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest." Id. at 302 (alteration in original) (quoting 8 U.S.C. § 1226(a)). Section 1226(a) "also permits the Attorney General to release" noncitizens "on bond" or conditional parole. Id. at 303. Under the relevant implementing regulations, the arresting immigration officer makes an initial custody determination, 8 C.F.R. § 1236.1(c)(8), which the noncitizen may challenge by requesting a custody-redetermination hearing before an immigration judge, id. § 1236.1(d)(1). Further, "[t]he Attorney General at any time may revoke a bond or parole authorized under [§ 1226(a)], rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).

## IV.    Application

As previously mentioned, the respondents assert that the petitioner is subject to mandatory detention under § 1225(b)(1).[3] Pereira Da Silva counters that the current record forecloses the

---

[3] Because the Court concludes that the petitioner is subject to mandatory detention under § 1225(b), it does not reach the respondents' alternative argument that Pereira Da Silva may be subject to

respondents' theory for two principal reasons. First, the petitioner emphasizes that DHS "initiated full removal proceedings" under 8 U.S.C. § 1229a against him after the original expedited removal order "was vacated following a positive credible fear determination." (Pet'r's Reply to Resp'ts' Opp'n at 5, 6 (dkt. no. 9).) Second, he underscores that the NTA "charges [him] in removal proceedings as 'an alien present in the United States,'" not an "arriving alien." (Id. at 2 (quoting NTA at 1).) Contrary to the petitioner's assertions, those aspects of the record do not conflict with the proper scope of § 1225(b).

First, the NTA indicates that USCIS vacated its prior expedited removal order pursuant to 8 C.F.R. § 208.30. Among other things, § 208.30 provides that

> [i]f an alien subject to [8 U.S.C. § 1225(a)(2) or (b)(1)] indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by a USCIS asylum officer in accordance with this section.

8 C.F.R. § 208.30(b). If the asylum officer finds a credible fear of persecution or torture, USCIS may issue the applicant a Notice to Appear "for full consideration of [his] asylum and withholding of removal claim in proceedings under [§ 1229a] of the Act." 8 C.F.R. § 208.30(f). In such circumstances, "[p]arole of the alien may be considered only in accordance with [8 U.S.C. § 1182(d)(5)] and 8 CFR § 212.5"—that is, the express exception to § 1225's mandatory detention scheme discussed above. See 8 C.F.R. § 208.30(f).

Here, the asylum officer "found that the [petitioner] . . . demonstrated a credible fear of persecution or torture." (NTA at 1.) Thus, the decision to vacate the expedited removal order and initiate standard removal proceedings against the petitioner pursuant to § 1229a is not in conflict with § 1225's directives. Rather, it is simply one permissible sequence of the relevant procedures

---

mandatory detention under 8 U.S.C. § 1226(c) on account of his arraignment in the Massachusetts District Court on criminal charges unrelated to this petition.

contemplated by the Act and its implementing regulations. See 8 C.F.R. § 208.30(f) (explaining that, upon a positive credible fear finding, "USCIS has complete discretion to either issue a Form I–862, Notice to Appear, for full consideration of the asylum and withholding of removal claim in proceedings under section 240 of the Act, or retain jurisdiction over the application for asylum pursuant to [8 C.F.R.] § 208.2(a)(1)(ii) for further consideration in a hearing pursuant to [8 C.F.R.] § 208.9").

Second, the petitioner seizes on the fact that the NTA charges him as "an alien present in the United States who has not been admitted or paroled." (NTA at 1.) That is significant, Pereira Da Silva contends, because the NTA "does not describe [him] as an 'arriving alien.'" (Pet'r's Reply to Resp'ts' Opp'n at 7 (quoting NTA at 1).) Thus, the argument goes, as "an alien present in the United States," the petitioner is subject to § 1226(a), (see id. at 5–7), which "applies to aliens already present in the United States," see Jennings, 583 U.S. at 303.

But that argument does not account for the fact that Pereira Da Silva's Interim Parole began shortly after he was first encountered by CBP—not ICE—at the United States-Mexico border. According to the record before the Court, that encounter resulted in the petitioner's arrest and the issuance of an expedited removal order charging the petitioner as an inadmissible applicant for admission. To be sure, the expedited removal order was vacated, but the resulting NTA charges the petitioner as subject to removal under § 242(a)(7)(A)(i)(I) of the Act, which applies to a noncitizen "who, *at the time of application for admission*, is not in possession of a valid . . . entry document required by the Act." (NTA at 1 (emphasis added).) Moreover, as discussed above, an applicant for admission paroled under § 1182(d)(5)(A) may be "physically present in the United States without being legally 'admitted' to the United States," see Doe, 152 F.4th at 279, and "[a]n arriving alien remains an arriving alien . . . even after any [§ 1182(d)(5)(A)] parole is terminated

or revoked," see 8 C.F.R. § 1.2. Thus, the Court finds nothing in the current record to suggest that DHS is attempting retroactively to apply § 1225 to the petitioner.

Pereira Da Silva's remaining arguments focus largely on the correlative scope of certain subsections of § 1226. He does not explain in the first instance, however, why § 1226—and not § 1225—governs his present custody. As the government observes, Pereira Da Silva does not argue, for example, that he was ever released on personal recognizance pursuant to a Form I–220A, or that the term of his parole had expired before his re-arrest in November 2025. Nor does the petitioner elaborate upon the terms or circumstances of what the respondents characterize as his "Interim Parole," which began in October 2024. (Resp'ts' Opp'n to Pet. for Writ of Habeas Corpus at 2 (dkt. no. 8).)

In sum, Pereira Da Silva does not squarely address how or when the statutory authority for his present custody purportedly shifted from the mandatory scheme under § 1225 to the discretionary framework under § 1226 as he now urges. As the party with the burden of proof, that omission is fatal to his petition where, as here, the respondents contend that § 1225's mandatory detention scheme applies and have proffered an evidentiary basis that supports that contention. See Jennings, 583 U.S. at 297.

## V.      Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED and the emergency motion is DENIED. The case is dismissed.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge